UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| ANDREA K. SAVIDGE, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 3:17-CV-186-CHB |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| PHARM-SAVE, INC., et al., | ) **ORDER GRANTING MOTION TO** |
| | ) **DISMISS** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Pharm-Save, Inc.'s ("Pharm-Save") and Neil Medical Group Inc.'s ("Neil Medical") Joint Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss") [R. 30]. This Motion seeks dismissal of all Plaintiffs' newly asserted claims in the First Amended Class Action Complaint ("Amended Complaint"). [*Id.*] Plaintiffs responded in opposition [R. 33], and Defendants replied [R. 34]. The Court previously granted Neil Medical's Motion to Dismiss for Lack of Personal Jurisdiction [R. 69], leaving Pharm-Save as the only defendant in this matter. For the reasons discussed below, Pharm-Save's Motion to Dismiss is granted.[1]

I.  **Background**

Plaintiffs Andrea Savidge and Beth Lynch were employees of Pharm-Save from 2013 to 2015 and 2013 to 2014, respectively. [R. 1-1 ¶ 7–8] On March 3, 2016, after Plaintiffs' employments with Pharm-Save had ended, a data breach occurred through which "an outside individual or group obtained copies of the W-2 forms which [Pharm-Save] sent to [its employees] and the IRS which would have included [employees'] social security number[s],

---

[1] This order does not affect Plaintiffs' remaining claims for negligence and breach of implied contract.

- 1 -

address[es] and [their] 2015 salary information." [*Id.* at Page ID #: 26–31] This data breach occurred when Pharm-Save fell victim to a phishing scheme perpetrated by cybercriminals. [*Id.* at ¶ 21–22] According to the Complaint, one or more Pharm-Save employees released Plaintiffs' sensitive and personal information contained in their W-2s to cybercriminals posing as company executives. [*Id.*] In letters dated March 24, 2016, Pharm-Save notified all affected employees, including Savidge and Lynch, of the incident. [*Id.* at Page ID #: 26–31] Pharm-Save explained the security breach and told employees that "[i]t is possible that the criminal(s) may have filed or may try to file fraudulent tax refunds in the names of our employees." [*Id.* at Page ID #: 26, 29]

Plaintiffs sued Pharm-Save and Neil Medical in state court for the release of their personally identifiable information ("PII"). [R. 1-1] Defendants timely removed the action to this Court [R. 1] and simultaneously filed a motion to dismiss [R. 5]. The Court granted in part and denied in part that motion, leaving only two live claims: negligence and breach of implied contract. [R. 26] The Court also granted Plaintiffs' motion for leave to file an amended complaint. [*Id.*] Plaintiffs' Amended Complaint does not contain new factual allegations, but it advances four new legal theories centered on Pharm-Save's alleged mishandling of Plaintiffs' PII: 1) trade secret misappropriation, 2) conversion, 3) trespass to chattels, and 4) bailment. [R. 27] Pharm-Save moved to dismiss all newly asserted counts pursuant to Fed. R. Civ. P. 12(b)(6). [R. 30] The Court will discuss each new claim in turn.

II. **Motion to Dismiss Standard**

Dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) where the plaintiff "fails to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679. In order to survive a Rule 12(b)(6) motion, the complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The "complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. Discussion

#### A. Trade Secret

Plaintiffs first claim that their PII is a trade secret, which Pharm-Save misappropriated by releasing their information to cybercriminals in violation of the Kentucky Uniform Trade Secrets Act ("KUTSA"). [R. 27 ¶¶ 2–11] To establish a KUTSA violation, Plaintiffs must show that the

information 1) qualifies as a trade secret, and 2) was misappropriated. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 794 (W.D. Ky. 2001) (citing Ky. Rev. Stat. Ann. § 365.880 (West 2019)).

Plaintiffs offer the conclusory statement that their "PII constitutes a 'Trade secret' within the meaning of KRS 365.880." [R. 27 ¶ 6] The KUTSA defines a trade secret as information that derives independent economic value "from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ky. Rev. Stat. Ann. § 365.880(4) (West 2019). Certain PII—such as an individual's social security number—may meet some prongs of the trade secret definition. For example, it is uncontroversial that one's social security number is "information" which is not "generally known to" or readily ascertainable by others. In addition, in the hands of criminals, PII may acquire "economic value." *See, e.g.*, *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for . . . fraudulent purposes . . . ."). As a result, people generally take reasonable efforts to maintain their PII's secrecy.

But Plaintiffs' allegations regarding their PII's independent economic value are slim. They merely state that "the cybercriminals who obtained the Plaintiffs' . . . W-2 information may continue to exploit the data themselves and/or sell the data in the so-called 'dark markets.'" [R. 1-1 ¶ 25] However, speculating that cybercriminals *may* sell Plaintiffs' PII does not adequately allege that their PII has independent economic value. Furthermore, Plaintiffs do not claim that they would sell their own PII, nor do they describe how the cybercriminals' possession of their PII has diminished its economic value. *See Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d

524, 533 (D. Md. 2016) ("[Plaintiff] alleges that the value of her [PII] has been diminished by the data breach. She does not, however, explain how the hackers' possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information.").

In an attempt to salvage their unadorned trade secret allegations, Plaintiffs discuss a district court case which determined that "employee files . . . were trade secrets." *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, 3:12-CV-429-CRS, 2015 WL 520960, at *12 (W.D. Ky. Feb. 9, 2015). In that case, an employee at one facility disclosed client lists, client files, and other internal documents—including employee files—to a competitor. *Id.* at *13. These files contained employees' PII and protected health information ("PHI") in the form of resumes, background checks, Tuberculosis (TB) Assessments, and general employee information. *Id.* at *11–12. Although the Court found that the competitor gained economic value from obtaining those files, that value did not stem from the PII or PHI directly. *Id.* at *8. Rather, the competitor derived value from procuring the entire compilation of materials because it did not have to "gather the resumes [or] conduct background checks and TB Assessments [itself] . . . ." *Id.* As such, *Community Ties* does not validate Plaintiffs' contention that their PII has independent economic value. Because Plaintiffs fail to adequately plead the element that their PII qualifies as a trade secret, their KUTSA claim fails as a matter of law. *Auto Channel*, 144 F. Supp. 2d at 794.

Plaintiffs also allege that Pharm-Save's transmission of their PII to cybercriminals constituted misappropriation. [R. 33 p. 12] The relevant definition of misappropriation is:

> Disclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his

> knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

Ky. Rev. Stat. Ann. § 365.880(2)(b) (West 2019). Plaintiffs' bare allegation that Defendant misappropriated their PII by exposing it to cybercriminals—who posed as company executives—does not reach the plausibility benchmark.

Because a trade secret is a type of intellectual property, the parties involved in trade secret litigation are often business competitors. For example, the parties in *Community Ties* were two licensed health care facilities that provided services to Medicaid-eligible individuals. *Cmty. Ties*, 2015 WL 520960, at *1. One facility—CTA—already had a "Behavior Supports" program which provided services to privately housed clients, and the other facility—Homeplace—was discussing the possibility of creating a similar program. *Id.* at *1–2. Thus, when a CTA employee took internal documents to his new position at Homeplace for Homeplace's use, he misappropriated CTA's trade secrets and provided economic value to a CTA competitor. *Id.* at *13; *see also* 86 C.J.S. *Torts* § 50 (database updated December 2019) ("Information must be of peculiar importance to the business and have economic value to the competitor before the law will protect it as a 'trade secret.'").

Similarly, in *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, the plaintiff business alleged that its former employee misappropriated trade secrets consisting of pricing information, business arrangements, suppliers, customers, parts warranties, and vehicle repair histories. 514 S.W.3d 537, 555 (Ky. Ct. App. 2017). Although the Kentucky Court of Appeals found that "nothing in the record [satisfies] the statutory definition of a trade secret," *id.*, the allegations in that case fell into the familiar territory of a business suing when a competitor unfairly competed in the marketplace. *See* 161 Am. Jur. Proof of Facts 3d § 127 (2017) (database

updated November 2019) ("[A]n action for trade secret misappropriation is usually alleged by a plaintiff company against a defendant competitor . . . .").

Here, two former employees are suing their former employer for "misappropriation" of their personal information, which Pharm-Save allegedly exposed to cybercriminals who posed as company executives. [R. 1-1 ¶¶ 21–22] These cybercriminals fraudulently induced Pharm-Save to disclose the information and led Defendant to believe that the PII was only circulating internally. [*Id.*] A misappropriation claim, however, "is based on the improper use of a trade secret to gain an advantage over the plaintiff." Richard E. Kaye, *Cause of Action for Misappropriation of Trade Secrets* § 7, 64 Causes of Action 2d 525 (2014) (database updated November 2019) (citing *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 308–311 (D.N.H. 2012)). But what advantage could Pharm-Save gain over Plaintiffs by exposing employees' personal information to either company executives or cybercriminals? How did Pharm-Save "seek[] to profit from the [commercial] use of the secret"? *Id.* (citing *Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 794–96 (S.D. Tex. 2013)). These questions remain unanswered by Plaintiffs' Complaint. Even assuming that Plaintiffs' PII is a trade secret, Plaintiffs do not allege how Defendant's disclosure of their PII—ostensibly to Pharm-Save's own company executives—constituted "misappropriation" within the competitor-centric framework of the KUTSA.

B.      **Conversion**

Plaintiffs next claim that Pharm-Save committed the tort of conversion by transmitting their PII to cybercriminals. [R. 27 ¶ 14] The elements of conversion remain unsettled under Kentucky law. *Caudill Seed and Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-082-H, 2013 WL 4048541, at *7 (W.D. Ky. Aug. 9, 2013). In one formulation, the

Kentucky Supreme Court favorably quoted (without adopting) 90 C.J.S. *Trover and Conversion* § 4 (2004) for the proposition that:

> [t]he elements necessary to prove a conversion claim established in case law are (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Ctys. All Lines Fund Tr. v. McClendon,* 157 S.W.3d 626, 632 n.12 (2005). However, a more recent unpublished Kentucky Court of Appeals decision states that "[i]n Kentucky, '[t]he elements of a conversion claim are (1) ownership rights in a certain property, (2) the wrongful act of taking or disposing of property, and (3) causing damages.'" *Atmos Energy Corp. v. Honeycutt*, Nos. 2011-CA-601-MR, 2011-CA-783–MR, 2013 WL 285397, at *11 (Ky. Ct. App. Jan. 25, 2013) (quoting *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) (citing *Anderson v. Pine South Capital, LLC,* 177 F. Supp. 2d 591, 603 (W.D. Ky. 2001); *Goss v. Bisset*, 411 S.W.2d 50, 53 (Ky. 1967)). Under either test, though, Plaintiffs' allegations are insufficient to state a conversion claim.

Plaintiffs failed to adequately allege facts relating to several of the *McClendon* elements. For example, for element three, Plaintiffs do not indicate how Pharm-Save exercised "dominion" over their PII "to [Pharm-Save's] own use and beneficial enjoyment." In fact, Plaintiffs acknowledge that Pharm-Save was the victim of a cybercrime—making it difficult to imagine how the repercussions of a phishing scheme benefitted Defendant in any way. Plaintiffs' only allegation addressing a potential benefit to Pharm-Save occurred during Plaintiffs' employment (which ended before the data breach befell Defendant). Access to Plaintiffs' PII allowed

Pharm-Save to verify its employees' identities and maintain complete employee records for tax purposes. [R. 1-1 ¶ 61] However, this benefit—which accrued in 2013 when Plaintiffs began their employment—does not extend to the entirely separate episode of the March 3, 2016 data breach. Furthermore, Plaintiffs do not allege that Pharm-Save's use of their PII ever denied them the "right[] to use and enjoy [their PII]."

For *McClendon*'s fourth element, Plaintiffs provide only slim facts that Pharm-Save "intended to interfere with" their possession of PII. Conversion "is an intentional tort" and "[t]here is no such thing as a conversion by accident." *McClendon*, 157 S.W.3d at 632 (internal citation omitted). However, the intent required is merely "the intent to exercise control over the property." *Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. Ct. App. 2016) (quoting 13 David J. Leibson, *Kentucky Practice—Tort Law* § 8.2 (2015 ed.)). Because "wrongful intent is not an essential element" of the tort of conversion, it is irrelevant whether Pharm-Save acted in good faith. *Id.* (internal citation omitted). Despite this low bar, however, Plaintiffs nowhere allege that Pharm-Save intended to exercise control over their PII. Cases where plaintiffs successfully alleged conversion are instructive on this point. In *Jasper*, the plaintiff alleged conversion of her diamond ring, which a thief sold to the defendant. *Id.* at 580–81. Even though the defendant did not personally steal the plaintiff's ring, he admitted that he agreed to purchase it. *Id.* at 583. The Kentucky Court of Appeals found that this act satisfied the intent element because the defendant intended to purchase the ring (and thus intended to have complete control and dominion over it). *Id.*

Similarly, in *National Union Fire Ins. Co. v. Bowling Green Recycling*, the plaintiff alleged conversion of reels of copper, which an employee stole and sold to defendants. 1:15-CV-024-GNS-HBB, 2017 WL 6508359, at *1 (W.D. Ky. Dec. 19, 2017). The defendants

neither stole the copper themselves nor knew that they were purchasing stolen copper. *Id.* However, the defendants conceded that they "intended to purchase the copper," which established the intent element for a claim of conversion. *Id.* at *3.

Unlike the defendants in *Jasper* or *National Union*, Pharm-Save's act of exposing Plaintiffs' PII to cybercriminals does not embody the requisite intent for conversion. Pharm-Save did not intend to completely exclude all others from Plaintiffs' PII by transmitting the information to a third party. *See Cmty. Ties*, 2015 WL 520960, at *19 (internal citation omitted) ("[T]he tort of conversion requires an unauthorized taking or dispossession *to the complete exclusion* of the rightful possessor, not a mere temporary interference with property rights.") (emphasis in original). Thus, this case is dissimilar to those where the defendant 'intends to purchase' a good in order to obtain complete possession of it. Plaintiffs' allegations that Pharm-Save's "acts and/or omissions" were "wanton and/or willful" do nothing to salvage this claim. [R. 27 ¶ 16]

For *McClendon*'s fifth element, Plaintiffs failed to allege that they demanded return of their PII. When Plaintiffs began their employment with Pharm-Save, they willingly provided their PII to Defendant. The Court wonders how one could then "return" that information, especially considering that Plaintiffs never lost possession of their PII. Neither Pharm-Save's possession of Plaintiffs' PII nor the data breach itself completely excluded Plaintiffs from possessing and using their PII. In contrast, the plaintiffs in *Jasper* and *National Union* suffered complete deprivations of property—a diamond ring and copper—that they were not able to recover. Here, Savidge and Lynch still have their same names and social security numbers, and they were not precluded from the using the other PII potentially compromised in the data breach.

[R. 1-1 at Page ID #: 26–31] This element further demonstrates how Plaintiffs' claim does not fit within the framework of a conversion tort.

Under *McClendon* or the *Atmos* line of cases, Plaintiffs' allegations fail to meet the pleading standard. Plaintiffs' Amended Complaint merely recites the *Atmos* elements of conversion without developing any factual assertions that would "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Specifically, Plaintiffs allege that they "had ownership rights to their PII," that Pharm-Save "engaged in the wrongful act of disposing of the PII by transmitting it to cyber criminals," and that Plaintiffs "were damaged." [R. 27 ¶¶ 13–15] These bare assertions that Pharm-Save converted Plaintiffs' PII are insufficient to survive a motion to dismiss.

## C. Trespass to Chattels

Plaintiffs next claim that Pharm-Save committed the tort of trespass to chattels by transmitting their PII to cybercriminals. [R. 27 ¶¶ 17–20] The Kentucky Court of Appeals defined this tort by quoting the Restatement (Second) of Torts § 217 (1965), which provides that "[a] trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Ingram Trucking Inc. v. Allen*, 372 S.W.3d 870, 872 (Ky. Ct. App. 2012). Kentucky law concerning trespass to chattels is otherwise sparse. *Stanley v. Knuckles*, No. 2016-CA-001290-MR, 2017 WL 6398296, at *4 (Ky. Ct. App. Dec. 15, 2017).

Plaintiffs' Amended Complaint contains only bare recitations of the elements of trespass. *Iqbal*, 556 U.S. at 678. Plaintiffs' unadorned statements include that Pharm-Save "intentionally dispossessed" Plaintiffs of their PII "and/or used or intermeddled with" Plaintiffs' possession of

their PII, and that Plaintiffs were damaged. [R. 27 ¶¶ 18–19] Such conclusory statements do not raise Plaintiffs' right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

Particularly, Plaintiffs provide only minimal facts that Pharm-Save "intentionally" used or intermeddled with their possession of PII. Because trespass is an intentional tort, "there can be no unintended 'trespass' to a chattel." *Ingram Trucking*, 372 S.W.3d at 872. However, a claim for trespass "only requires that the defendant intend to use the chattel." *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 936 (W.D. Ky. 2011) (citing Restatement (Second) of Torts § 217 cmt. c (1965)). The necessary intent is present even when a defendant interferes with a possessory right under a mistake of fact which leads him to believe his action is privileged. *Id.* As such, Pharm-Save is only required to have the intent to use the Plaintiffs' PII. Despite Plaintiffs' scant allegations, the Court can draw the reasonable inference that, because Pharm-Save allegedly transmitted Plaintiffs' PII to cybercriminals, the defendant intended to use the Plaintiffs' PII. *See Keenan v. Marker*, 23 F. App'x 405, 406 (6th Cir. 2001) ("[T]he court must construe the complaint in a light most favorable to the plaintiff . . . ."). Even though Pharm-Save apparently fell prey to a cybercrime—with no intent to commit a wrongful act against Plaintiffs—the Complaint satisfactorily alleges Defendant's "intent to use" the information when the data breach occurred.

Although Plaintiffs' Complaint contains the intent required to "use" Plaintiffs' PII, its trespass claim is deficient in multiple other respects. For example, Plaintiffs nowhere allege in their Complaint that their PII is a "chattel" or personal property. Instead, Plaintiffs cite a Kentucky Supreme Court case in their Response that treats internet domain names as "intangible property" for determining standing in an in-rem action. *Com. ex rel Brown v. Interactive Media Entm't & Gaming Ass'n, Inc.*, 306 S.W.3d 32, 34–35 (Ky. 2010). Unlike internet domain names,

though, PII cannot be trademarked and is not recognized as a form of intellectual property. *See, e.g.*, 15 U.S.C. § 1125(d)(1)(B)(i) (2012) (referencing "the trademark or other intellectual property rights of the person, if any, in the domain name"). Furthermore, *Interactive Media* lacks any analysis of what constitutes "intangible property." Without the benefit of such a framework, *Interactive Media* cannot elevate Plaintiffs' unsupported contention that PII is personal property to the necessary level of plausibility.

In addition, Plaintiffs' trespass allegations are insufficient because the acquisition of their PII involved no physical invasion or confiscation of actual property. *See Cmty. Ties*, 2015 WL 520960, at *20 (noting that the common law writ of trespass "dealt with recovery of property that was initially and continually held wrongfully . . . [it did not] contemplate[] that a plaintiff could seek recovery of property that he or she never lost possession of"). Even courts that have attempted to reconcile a trespass claim with PII acquisition still require the plaintiff to allege a physical trespass "to a computer system, or a similar device." *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113-JSW, 2013 WL 1282980, at *15–16 (N.D. Cal. Mar. 26, 2013). In this context, the plaintiff must demonstrate some actual interference with the physical functionality of a device. *Intel v. Hamidi*, 71 P.3d 296, 299–300 (Cal. 2003). Here, Plaintiffs do not allege interference with their own computers or devices. Nor could they make such allegations because any interference occurred with Pharm-Save's computer systems that stored Plaintiffs' PII. [R. 1-1 ¶ 22] In sum, Plaintiffs' threadbare recitation of the trespass elements do not satisfy the pleading requirements of Rule 8, and this claim must be dismissed. *Iqbal*, 556 U.S. at 679.

### D. Bailment

Plaintiffs' First Amended Complaint lastly seeks to add a claim for bailment. [R. 27 ¶¶ 21–27] "A bailment occurs when one person (the bailor) delivers possession of some personal

property to another person (the bailee). The defining element of the transaction is the 'requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished[.]'" *Lindsey v. U.S. Bank Nat'l Ass'n*, No. 4:15-CV-119-JHM, 2017 WL 1015858, at *2 (W.D. Ky. Mar. 15, 2017) (quoting *Mezo v. Warren Cty. Pub. Library*, No. 2009-CA-000631-MR, 2010 WL 323302, at *2 (Ky. Ct. App. Jan. 29, 2010)) (quoting 8A Am. Jur. 2d Bailments § 1 (2009)).

The Plaintiffs' bailment claim suffers from the same shortcomings as its trespass claim because Plaintiffs nowhere allege that their PII is personal property. Even if Plaintiffs had made this allegation, bailment does not contemplate a situation where both the bailor and bailee maintain separate but complete possession of the "property." *See* 8A Am. Jur. 2d Bailments § 2 (2009) (defining delivery "as the bailor's relinquishing exclusive possession, custody, and control to the bailee"); *see also Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) ("[T]he Court is hard pressed to conceive of how [Plaintiff's] social security number could be construed to be personal property so that [Plaintiff] somehow 'delivered' this property to Gap and then expected it to be returned."). Plaintiffs and Pharm-Save (as well as any of Plaintiffs' former or current employers, health care providers, etc.) can simultaneously possess and fully utilize Plaintiffs' PII. As a result, neither Plaintiffs nor Defendant could have "exclusive" control over Plaintiffs' PII. Because Plaintiffs retained the full knowledge of their PII's contents, they experienced no meaningful loss by transmitting their information to Pharm-Save. If such an unorthodox legal theory for Plaintiffs' bailment claim exists, Plaintiffs have failed to present it, and the Court finds nothing to support it.

## IV. Conclusion

For the reasons stated above, the Court finds that each of Plaintiffs' newly asserted legal theories fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly,

**IT IS HEREBY ORDERED** as follows:

1. Pharm-Save's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [**R. 30**] is **GRANTED**.

This the 17th day of January, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY